# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 3, 2010

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

139294(32)

SHERI SCHOOLEY,
          Plaintiff-Appellee,

v

CONSOLIDATED ROADHOUSE OF
TAYLOR, LLC, d/b/a TEXAS ROADHOUSE,
          Defendant-Appellant.
_____/

SC: 139294
COA: 291284
Wayne CC: 08-106910-NO

      On order of the Court, the motion for reconsideration of this Court's May 21, 2010 order is considered, and it is DENIED, because it does not appear that the order was entered erroneously.

      KELLY, C.J. (*concurring*).

      It is well-settled that "[a] denial of leave to appeal has no precedential value."[1] Thus, the dissent can be reassured, this order and our May 21, 2010 order denying leave to appeal do not constitute a "conclusion" on which the "imposition of strict liability upon a business" can be premised.[2]

      It is undisputed in this case that defendant's toilet paper dispenser broke plaintiff's hand when she was using it in a normal manner while a patron in defendant's restaurant. It is also undisputed that checking whether the dispensers were in the "locked" position was not part of defendant's routine restroom inspections. Thus, if a jury concluded that the dispensers constituted a "dangerous condition," it could certainly conclude that defendant's inspections were insufficient to satisfy its duty to inspect the premises.

---

[1] *Tebo v Havlik*, 418 Mich 350, 363 n 2 (1984) (opinion by BRICKLEY, J.); *id.* at 371 n 2 (opinion by RYAN, J.); *id.* at 380 n 18 (opinion by LEVIN, J.).

[2] *Post* at ___ (MARKMAN, J., dissenting).

By denying reconsideration of our denial of leave to appeal, this Court has not decided whether plaintiff should recover damages from defendant. It has merely decided that the Court of Appeals and the trial court were correct in allowing the case to continue. As always, the burden will be on plaintiff at trial to show that her injury occurred because the dispenser represented an unreasonable risk of harm. As always, she will be required to show that defendant knew or should have known of the risk. It is not for this Court but rather for the jury to decide if the dispenser that harmed her constituted a dangerous condition.[3]

It would be improper for this Court to rule that an ordinary instrument like a toilet paper dispenser could never cause compensable harm for the mere reason that it is used in people's day-to-day lives. The dissenters would have us believe that great harm is done to the rule of law by our denial here. My belief is that the great harm would be for this Court to reverse both lower courts and alter settled law that holds that (1) "[t]he landowner has a duty of care, not only to warn the 'invitee' of any known dangers, but to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards,"[4] and (2) a lawsuit should not be dismissed on summary disposition where a genuine issue of material fact has been shown to exist. MCR 2.116(C)(10).

MARKMAN, J. (*dissenting*).

I strongly dissent, and would grant defendant's motion for reconsideration, vacate this Court's May 21, 2010 order, and reverse the trial court's denial of defendant's summary disposition motion. I continue to believe that an ordinary, toilet paper dispenser does not constitute a "dangerous condition" causing "an unreasonable risk of harm" on a business premises. *Lugo v Ameritech Corp*, 464 Mich 512, 516 (2001).

As already set forth in my statement dissenting from the denial of leave to appeal in this case, *Schooley*, 486 Mich at 920, plaintiff alleges that, while she was using the restroom at defendant's restaurant, a plastic toilet paper dispenser fell open and injured

---

[3] The dissent concludes that the hazard in this case could not have reasonably been anticipated as a matter of law. But that conclusion rests on speculation. There is no evidence that defendant's employees inspected its toilet paper dispensers to see if they were closed. In fact, plaintiff argued before the trial court that defendant's restaurant manager conceded that the dispensers were not inspected even though he was aware that customers tampered with them. Thus, it is proper to leave the determination of the truth of the assertion to a jury, not to this Court.

[4] *Wymer v Holmes*, 429 Mich 66, 71 n 1 (1987), overruled on other grounds by *Neal v Wilkes*, 470 Mich 661 (2004).

her hand.  The trial court denied defendant's motion for summary disposition, and the Court of Appeals and this Court denied defendant's applications for leave to appeal.

In its motion for reconsideration, defendant argues that if this Court's order is allowed to stand, there will be "no more negligence/premises liability law in the State of Michigan."  While that assertion is perhaps slightly hyperbolic, it is hard to understand the actions of the majority as anything other than the imposition of strict liability upon a business for an accident occurring on its property.  The law, at least as it has always previously existed, has never imposed such an obligation upon a premises owner.  Rather, the law was clear that "[t]he duty a possessor of land owes his invitees is not absolute . . . it does not extend to conditions from which an unreasonable risk *cannot be anticipated*." *Williams v Cunningham Drug Stores*, 429 Mich 495, 500 (1988) (emphasis added).  The law was clear that a plaintiff must show a "dangerous condition" that caused "an unreasonable risk of harm" that the landowner "knows or should know invitees will not discover, realize, or protect themselves against."  *Bertrand v Alan Ford*, 449 Mich 606, 609 (1995).  Because a toilet paper dispenser hardly constitutes "a dangerous condition;" because a toilet paper dispenser does not create "an unreasonable risk of harm" that should be "anticipated;" because a toilet paper dispenser that may come open once every 3-4 years does not constitute "notice" of a dangerous condition; and because defendant here was at least ordinarily diligent in fulfilling its duty to inspect its premises and warn patrons of hazardous conditions, plaintiff cannot sustain her lawsuit.

Indeed, defendant satisfied the exact standard that the concurring justice invokes.  Citing *Wymer v Holmes*, 429 Mich 66, 71 n 1 (1987), overruled on other grounds by *Neal v Wilkes*, 470 Mich 661 (2004), the concurrence correctly states that "[t]he landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards."  The concurrence fails to acknowledge, however, that the defendant-restaurant here *did* inspect the premises—in fact, it inspected the restroom regularly at 15-30 minute intervals—and did not discover any hazards.  Thus, how could it make any "necessary repairs" or "warn" its customers when there were no necessary repairs to make and there were no hazards of which to warn?  There is no genuine issue of material fact on this question that would preclude summary disposition under MCR 2.116(C)(10).

The majority's contrary conclusion is inconsistent with the law of this state, which has always recognized that liability should not attach for ordinary conditions on property that persons must routinely negotiate in their day-to-day lives.  If the toilet paper dispenser at issue here serves to impose liability on a landowner, the number of ordinary and innocuous things that will do the same is limitless.  If the defendant restaurant's inspections in this case are insufficient to satisfy its duty, premise owners will be held to an effectively strict-liability standard, under which they must inspect their premises for

"conditions from which [even] an unreasonable risk cannot be anticipated." *Williams*, 429 Mich at 500. Indeed, if I understand the concurring Justice correctly, it was not enough for defendant to have inspected the restroom every 15-30 minutes for any hazards that *could* reasonably have been anticipated, such as wet floors. Nor was it enough for defendant to visually check that its toilet paper dispensers were in a proper position, excluding presumably those dispensers located in stalls being utilized at the time. Rather, defendant apparently also had a legal duty to inspect for hazards that *could not* reasonably have been anticipated, such as a toilet paper dispenser opening unexpectedly even when it appeared closed.

According to the concurring Chief Justice, "there is no evidence" that defendant's employees inspected its toilet paper dispensers, and any such conclusion "rests on speculation." I disagree. In my view, this conclusion is inescapable as it derives from a logical deduction from the uncontroverted evidence. The evidence established that defendant's employees inspected the restroom every 15-30 minutes. Common sense would seem to dictate that these employees had their eyes open when they performed the restroom inspections, and therefore that they would have seen if a toilet paper dispenser had been in an improper and "hazardous" position. Such "speculation," in my judgment, does not require that this case must be relegated "to a jury," and cannot be decided as a matter of law.

In sum, if the majority continues to abide by the understanding of premises liability reflected in this case, the effect will be severely damaging upon even the most responsible business and private landowners in this state. As correctly observed by the defendant restaurant,

> When this Court [holds] that something as innocuous as a routine, toilet paper dispenser constitutes a "dangerous condition" causing an "unreasonable risk of harm," without any evidence that the defendant business created, knew, or should have known that such an ordinary device on its premises constituted such a danger, then any accident that occurs on the premises of a business establishment in this state becomes compensatory.

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 3, 2010

_____
Clerk

d1130